Good morning, Your Honors. I'm Randy Baker for the appellant Thomas Wheelock. At the outset, I have to decline your praise. I'm not appearing pro bono, but I'm rather on appointment by the Court, having said that. All right. Well, thanks for doing that. That I'll accept. Thanks for showing up. There's two issues, if I have time, that I'd like to address. The first is the removal of a sitting juror during deliberations for a cause, which the State court determined to be incorrect under State law. And the second issue is the claim that there was discrimination in the selection of grand jury for persons under the Fourteenth Amendment. Now, as to the first claim, what happened in this case is it was a six-week trial, and about ---- We know the facts. So I think we'd like to hear your strongest authority for dismissing a juror during deliberations for implied bias. What's your established Federal law? Because I wasn't able to find any, and the Ninth Circuit seems to imply that you can excuse jurors for that reason. Well, Your Honor, let me go back just a little bit. The California Court of Appeals said it was unlawful to remove this juror. The claim was the juror was impliedly biased because she was being prosecuted in another case by the prosecutor's office in this case, and indeed defended by the Federal court. And the public defender, too. Okay. In California, that is not a lawful ground for cause dismissal. The Court expressly found that this juror had been entirely forthcoming during the trial. She was being prosecuted for housing fraud. She's not an attorney and did not cite the apposite statute. The district attorney maintained, well, he hadn't understood. He had thought it was in Federal court and only discovered two-and-a-half days into deliberations that his office ---- Well, I think we know the facts, but you're here under the habeas lens. So tell me what the clearly established Federal law is. Yes. McCollum v. Georgia. In that case, the United States Supreme Court, it's cited in the Seventh Circuit case I cited, United States v. Harbin. In McCollum v. Georgia, the United States Supreme Court held that it would violate the obligation under the Sixth Amendment to ensure equality between the prosecutor and the defense counsel if defense counsel ---- if the defense was not subject to Batson challenges, alleging that they had used preemptory challenges for purposes of racially or otherwise improperly structuring the jury. Now, in U.S. v. Harbin, the Seventh Circuit applied that case, as well as Holland v. Illinois, in which the Court held that limiting preemptory challenges based on race did not ---- This isn't a preemptory challenge. I understand that. Let me just stick with a more opposite case, which is McCollum v. Georgia. So U.S. v. Harbin, in that case, it was a preemptory challenge. The Court expressly said its holding was not contingent on it being preemptory. Its holding was based on the fact that what happened in that case was a preemptory challenge was made by the prosecution. In fact, prior to deliberation, six days into an eight-day trial, when preemptory challenges were prohibited under the rules, so the district attorney, the prosecutor, was allowed to violate the rules and thus asymmetrically constituted the jury. The Seventh Circuit said, well, what's happened here is that one side has gotten unilateral power to structure a jury during trial that destroys the impartial reality, the equality of sides, that the U.S. Supreme Court has stated is required. Okay. So I'm trying to understand, in that, the point was that the government was permitted a preemptory challenge that the defendant wasn't? That's correct. And in this case, the government ---- how is that like, this case? It's like this case because the government was allowed to break the rules and the defense wasn't. The rules were that there are no challenges for cause based on implied bias. Actual bias was allowed, but that the court expressly found this juror was entirely confident. Okay. So what is your clearly established Federal law that says that implied bias, that you can't do it for implied bias after jury selection? That's what I can't find. Okay. Your Honor, let me ---- Because McCollum is not that case. Well, I would submit McCollum is. What McCollum holds is that the prosecutor and defense has to be given an equal opportunity to structure the jury. If the State has a law and it only enforces that law against one party, then the parties are not ---- Okay. For it to be clearly established, I have to go from preemptory to for cause and to preemptory. You're saying that it's clearly established from when there is a preemptory challenge after the trial begins. Well, I guess I'm relying on the fact that in the way I read McCollum, the United States Supreme Court didn't say it's okay for one side to asymmetrically structure the jury if they use a device other than preemptory challenge. For example, if they improperly are granted a for cause challenge and the other side isn't, then it's okay. Did the defense try to disqualify a juror after ---- on the basis of implied bias, and was the defense told you can't? No. That's the ---- the defense objected, stating, though, that this is impermissible. Right. So ---- but you're right. The defense didn't try and say we get to make the law. Well, counsel, to characterize what happened here as the prosecution asymmetrically structuring the jury seems to be a bit of an exaggeration in terms of what happened here. I mean, there really ---- now, maybe the court did not apply the correct actual bias standard, but there was a problem here that the court thought had to be addressed. And these kind of things do happen even after a jury is deliberating. So I don't know how you can characterize what happened here as something as fundamental as the prosecution asymmetrically structuring the jury. That seems a bit of overreach. Well, Your Honor, I guess I'm following the analysis of the Seventh Circuit and U.S.P. Harbin. So in that case, what happened, it was fairly similar in the sense that during the middle of the trial, the juror discovered that he knew the mother of one of the witnesses. So the juror was immediately disclosed that to the court. A hearing was held. The court determined the juror was, you know, could remain unbiased. And then at that point, the court allowed the prosecution to strike the juror using a peremptory, which was against the rules. There was no bad intent. There was just as in this case, something came up no one anticipated, but it was the wrong move. And what happened was, and the Harbin court pointed out, and I think this is very important, you know, six days into a trial, lawyers get some sense of, often, how a juror's doing it. But is there anything in the record that indicates that this juror was the holdout juror, that she wasn't deliberating, that there was anything like that? No, Your Honor. My reading of the record is that we don't know anything about what she was doing in the deliberation room. So there are – I don't think you can make any case for the fact that the prosecution was targeting someone that was trouble. Well, Your Honor, I guess – I mean, the problem that was discovered is that the D.A.'s office and the public defender's office that was trying Mr. Wheelock was also the D.A.'s office and the public defender's office that was dealing with her Title – Section 8 fraud case. And the prosecution had wrongly jumped to the conclusion that it would be a Federal prosecution and it wouldn't be this, you know, the same, you know, the same – his office wouldn't be prosecuting her. And so he got a little – or he or she, I can't remember. I think it was a man. Yeah. Well, do you want to do your – do you want to talk about the grand jury? Yes, I do. So the grand jury consisted – the defense was able to ascertain the identity of grand jury for a person for 21 years. Out of the 21 years, they discovered that the grand jury – the four persons consisted of 29 percent women, although the population of – eligible population of Alameda County was 51 percent women, so a 22 percent disparity. And then it also discovered that there were zero Latinos and zero Asians, although the population of Alameda County for both of those ethnic groups was slightly over 14 percent. The trial court held that the mechanism of jury selection was fine, so there was no case. In order to prove discrimination, you need to show the jury selection mechanism or selection of four persons is susceptible of abuse. Now, in this case, the mechanism was judges relied on their social networks, their occasional volunteers, and in the case of the four persons, judges also consulted the district's attorney. Now, the court of appeal said, no, this method actually is susceptible of abuse. But the California court of appeal said, your data are no good. The data don't really show the disparity needed to prove discrimination. Now, what the California court of appeal entirely disregarded was the fact that the government was declaring privilege. Kagan, is there a case out there that says it's structural error when the grant jury, it's not the jury that tried the person? Right. Okay. Is there any case out there, a Federal case that says it's structural error if it's not composed the way that you, the way that you're alleging it should be composed? Yeah, there is, if you'll grant me a moment. All right. You saved that for rebuttal. When you're sitting down, you can find it. Thank you. But your point is that there is law out there that says that you're entitled to a fairly selected grant jury. Yes. And I would point out there's, so there's two challenges raised by the defense. And noted in the brief, I'm focusing on one, which is the equal protection challenge, that, and I will find the authority for that, it is undisputed that any kind of racial or gender discrimination in the selection of a foreperson is reversible per se. There's some argument about whether lack of balance under the Sixth Amendment, whether that's reversible per se.  But both of them depend upon the nature of the statistics that are available. Absolutely. And so, and the California court of appeal rejected the defense claim on, for the same reason, that the statistics were inadequate. Now, what happened in the trial court, however, was defense counsel expressed I don't care if you use all your time, but you're not going to have any time for rebuttal if you keep going. Okay. I'm going to risk that. Defense counsel asked for a sanction and was granted a sanction. The court credited defense counsel's data. The California court of appeal entirely disregarded that. Now, defense counsel said, and the court apparently must have credited because it issued the sanction, that I can't get better data. I don't have access. The government does. Did you try to subpoena anything? Apparently not. But interestingly, of course, when the trial court grants your motion for sanctions and credits your data, it's really immaterial. Actually, I take it back. A subpoena was issued. I don't think it was followed through, however, because the court credited the data. So since the data were credited, it would have been unreasonable and a waste of time for defense counsel then to seek further data since he already had the data on which he was relying. Now, in the case of Hall v. Department of Corrections, the Ninth Circuit had a very similar case to this in the sense that the court of appeal entirely disregarded a ruling by the trial court. The Ninth Circuit in Hall v. Department of Corrections said that was an unreasonable construction of the record, because obviously reviewing courts have discretion to decide that the trial court has incorrectly ruled, but you have to address the ruling. Roberts, before you sit down, perhaps as a point of instruction for me, I'm a little puzzled by this focus on the foreperson of the grand jury. What is so consequential about the role of the foreperson that any evidence of discriminatory practices in selecting a foreperson is so important? Why does that matter so much as opposed to the larger issues of underrepresentation that you've addressed? Well, two points. I'm stressing that because it's been held reversible per se when there's discrimination. But just on top of that, I would point out in Alameda County, the foreperson's job is not simply ministerial. The foreperson actually has discretion to remove another member of the grand jury if, in his or her opinion, that member is biased. So that's a pretty material power, and I will not use more time unless there's more questions. We have no more time. Thank you. Oh, don't leave. I'm sorry. Good morning. I didn't want her to skirt. I didn't mean for you to leave. Stay, please. Good morning. May it please the Court. On the first claim of implied bias, there isn't any Supreme Court authority discussing implied – holding that implied bias exists, setting forth parameters. This claim, this entire claim, is in the weeds to begin with. So – but – and that's dispositive in and of itself. But even applying circuit authority, such as Symington and so forth, this claim doesn't come close. There simply was no evidence that this was racially motivated. As for – as for the issue with the Batson cases, peremptories and forecaused challenges are materially different. The cases that discuss peremptories, Harbin, for example, there the peremptory was – was granted after the defense had none left. Here, completely different. Both parties had peremptories left. Both parties had the opportunity to challenge for cause. And when cause exists, a trial court must excuse the juror. This wasn't a unilateral – a peremptory – a peremptory challenge, which doesn't have to meet the – the standards of cause, is much more of a unilateral decision. But when the cause exists, as was raised by the prosecutor, it – the juror must   GOTTLIEB It's an implied bias, because the court does say, I don't have any indication from this person that she said she wouldn't be fair or that she's done anything wrong as a juror up to this point. It's just that, oops, you know, I can see where it could be a problem if the same office that's handling this case is prosecuting you on another case and the same office that's defending this case is defending you on that case. So it is – it's implied bias. MR. GOTTLIEB I don't think the prosecutor –  GOTTLIEB So if she didn't do anything wrong and she didn't withhold anything, the DA just didn't – really probably didn't look into it as much as he should have. MR. GOTTLIEB That's correct. And there was some claim in the trial court that the DA waived it or should have discovered it further. But, frankly, both parties should have discovered this. Both parties, had they learned of this, should have brought it to the attention of the trial court. And the prosecutor discovered it first and did so. MR. ROGERS Counsel, how long had the jury been deliberating before this juror was removed? And then how long – how quickly did the jury come in after this woman was removed? MR. GOTTLIEB I – off the top of my head, I think it was more than a day. I want to say three days. And after, it was a shorter period. MR. ROGERS It was a matter of less than an hour, wasn't it? MR. GOTTLIEB I think it was more than an hour. MR. ROGERS Okay. MR. GOTTLIEB I thought it was – I thought it was less than a day, but more than one hour. I honestly don't recall off the top of my head, though, but I believe it is in the briefs and the state court opinion. MR. ROGERS And this – the juror who was removed was one of only two African American members of the jury. Is that correct? MR. GOTTLIEB That's correct. And there's – Wheelock has claimed that, as I understand it, that a for-cause dismissal is somehow limited by the fact of it being – that juror being a minority. And there's simply no authority for that. If the dismissal is based on race, I'm sure that's inappropriate. But his claim presupposes that it was based on race and then says, well, you can't do that. That's not – our claim isn't that you can bring a for-cause challenge based on race. If there is legitimate cause, as there was in this case, the juror must be dismissed regardless of whether they are a minority juror. That's our position. On the subject of the grand jury, I think there's a bit of a red herring here in terms of what was credited. First of all, our reading of the record, and Mr. Wheelock has cited the record on this point, that the trial court granted sanctions or credited his data. It simply doesn't say that. There was a discussion where he's asking for sanctions, and the trial court is saying, all right, all right. And it's – at most, it's ambiguous whether the trial court is saying, all right, I grant your motion and I'll find X, or he's saying, all right, I understand you, because he's saying it repeatedly. I don't know what the meaning of that is, and I don't think it's very clear that sanctions were granted. But even if we assume that, the question isn't whether the data was credited. It was the quality or the extent of it. The trial – or the court of appeal accepted his numbers as stated, in fact, was very charitable. Added one more Caucasian juror because there was, in some instances, an unknown number to fill in, and it was unknown what the race was. The court of appeal assumed in each instance that that was a Caucasian juror and said, your statistics don't – aren't sufficient. It wasn't an issue of whether this data was any good. The trial – the court of appeal assumed it was what it said it was. However, that didn't prevent it from making qualitative criticisms of it. For instance, that gross numbers were used instead of eligible jurors. And that's a significant point in California where we have a large immigrant population, and to sit on a grand jury by California law, you have to be a U.S. citizen. So that's a significant point in California where the challenged numbers are the Hispanic population and the Asian population. Unless all of those statistics, all of those numbers were U.S. citizens, then it's skewed to begin with. But in any event, accepting the numbers as stated does not mean that the – that they were accepted as showing a prima facie case. They were just simply at best. If you say there were 10 Hispanics on the juror, we accept that. It was as simple as that. It wasn't a qualitative assessment. And if you look – it's quite simple. The numbers are quite simple. If you look at the gross disparities, if you look at the – he was, excuse me, indicted right in the middle of the 1990 and 2000 census. If you look at those numbers, you've got an 11.7 underrepresentation of Asians, 5.9 underrepresentation of Hispanics. If you take 1980 and look at across the two decades, the numbers are even better for the State. In other words, showing a lesser gross disparity. But even accepting these higher numbers, they are plainly reasonable. There is no Supreme Court authority stating what degree of underrepresentation is required or over what – But the standard is what? Significant? Is that the word? Substantial underrepresentation. And that comes from? Which case? I don't recall off the top of my head. I have, quote, substantial underrepresentation over, quote, a significant period of time. That's on the equal protection challenge.  But as to either of those standards and as to the issue of over what span of time we must look, there isn't a holding. Are those questions of law or are those questions of fact? Which? As to whether or not it's significant over a substantial period of time or substantial over whatever. I would say that's a mixed question. But taking these numbers and applying them, but again, we have no standard as to what constitutes a substantial underrepresentation. Excuse me. So, counsel, what exactly are the apt comparisons? It's the percentage of an ethnic group in the general population compared to that percentage of that population group in the grand jury pool over time. How do you articulate the exact, the relevant comparators? My understanding is you take the population, the percentage of that minority in the population, ideally the percentage that's eligible to sit. Putting that aside, take the over. And you're suggesting that was not done here. That's, we're talking about citizens given the requirements for grand jury service. Is that correct? That's correct. And I'm not saying that that's fatal to the claim in and of itself because I think it was McDonough involved gross statistics. I think it was McDonough was the case. We're not saying that that's fatal to the claim, but that certainly is a subject for criticism of the numbers. So, but as for your question, my understanding is take the number in the population, percentage in the population compared to the percentage on the panel. So, going through each panel. Now, that's for the panel percentage, obviously, and not the four-person percentage. But that's our understanding of the test. And, again, you know, whether it's eligible or gross. I asked counsel about structural error on that. If his statistics, I'm not, I know you don't agree, but let's say if they were sufficient, is it then structural error even though Mr. Wheelock did have a jury trial and was found guilty beyond a reasonable doubt, which is a considerably higher standard in that jury than it is in the grand jury? I mean, the grand jury is sort of a screener, as it were. Your Honor, I did listen to that question, and I'm sorry I don't have an answer. I thought it was not, but I don't have it in front of me. So you don't have a case either? No, I don't. I'd be happy to brief that after argument. No, thanks. If the Court has no further questions, I would submit it on that. All right. Thank you. Counsel for appellant doesn't have any additional time, but if either of you have questions of counsel. All right. The only thing, counsel, if you want to just give me a case. I don't want an explanation, but what was your best case on that? Can you come up to the, because we record. So, Your Honor, you're asking for the case. That you are going to find. Yes. It's Rose v. Mitchell, and it's 443 U.S., and I have the pin side at 556. Okay. Thank you. Thank you. This matter then stands submitted.
judges: Schroeder, Lipez, Callahan